James TILLEMA, Petitioner–Appellant,

v.

Miles LONG, Warden; Frankie Sue Del Papa, Respondents–Appellees.

No. 00–15974.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2001

Filed June 19, 2001

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 3, 2001.

John C. Lambrose, Office of the Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Rene L. Hulse, Deputy Attorney General, Las Vegas, California, for the respondents-appellees.

Before: REINHARDT, RYMER, and FISHER, Circuit Judges.

Opinion by Judge REINHARDT; Partial Concurrence and Partial Dissent by Judge RYMER.

REINHARDT, Circuit Judge:

James Tillema appeals the dismissal, as untimely, of his petition for habeas corpus relief under 28 U.S.C. § 2254. We reverse.

## I. *Factual and Procedural Background*

Tillema was indicted on August 30, 1993, in Clark County, Nevada, and charged with three counts of burglary (two vehicle

break-ins and theft of a padlock from a Woolworth's store) and two counts of possession of burglary tools (a screwdriver and a "penlight"). He was prosecuted under Nevada's habitual offender statute and, after a two-day jury trial in which he represented himself, he was sentenced on November 23, 1993 to three consecutive life sentences on the burglary counts and two concurrent sentences of one year on the possession counts.

Tillema then commenced a complex and overlapping series of state challenges to his conviction and sentence. First, on March 14, 1994, Tillema filed a pro se "Motion to Vacate Illegal Sentence," in which he contended that his Pre–Sentence Investigation Report had contained "untrue factual allegations"—specifically, that he had violated his parole in a prior case, an allegation that he denied—that resulted in an improper sentence. The motion to vacate was dismissed by the trial court, and that dismissal was affirmed on the merits by the Nevada Supreme Court on December 4, 1994.

Meanwhile, through appointed counsel, Tillema initiated a direct appeal of his conviction on June 27, 1994, asserting six grounds for relief. On February 3, 1995, while that appeal was pending, Tillema filed a pro se habeas corpus petition in the state trial court, alleging two substantive grounds for appeal, as well as an ineffective assistance of appellate counsel claim based on his appointed counsel's failure to raise those two grounds on direct appeal. The trial court summarily dismissed the petition, and the Nevada Supreme Court dismissed Tillema's appeal from that dismissal on July 28, 1995.

Tillema then filed a second pro se "Motion to Vacate Illegal Sentence and Re-

mand for a Proper Sentencing Hearing" on October 30, 1995. Tillema once again alleged that his Pre–Sentence Investigation Report had erroneously represented that he had violated his parole in a prior case. As a result of that incorrect information, Tillema contended, he was required to serve his alleged parole violation of four years before his new sentences could begin to run. While that motion was pending, a divided Nevada Supreme Court considered Tillema's direct appeal and affirmed his conviction in a published opinion on April 3, 1996.[1]

On September 26, 1996, Tillema commenced federal habeas proceedings by mailing his pro se section 2254 petition, together with a motion to proceed *in forma pauperis,* to the United States District Court for the District of Nevada. On November 15, 1996, the district court denied the *in forma pauperis* motion "[b]ased on information about Petitioner's financial status," and noted that two of Tillema's seven claims appeared to be unexhausted. The court directed Tillema to "file an amended petition showing when and how he exhausted the stated grounds for relief" no later than December 3, 1996. Tillema complied and filed an amended pro se petition on November 21, 1996, asserting that each of his seven claims was fully exhausted. The district court acknowledged, in an order dated January 16, 1997, that Tillema's amended petition had been received and was "now in proper order." The court gave Tillema 30 days in which to pay the five-dollar filing fee.

The district court received Tillema's filing fee on February 10, 1997. It acknowledged receipt of the fee and ordered that the state be served with Tillema's petition

---

1. *Tillema v. State,* 112 Nev. 266, 914 P.2d 605 (1996). Two of the five justices dissented on the ground that the trial court had not adequately advised Tillema before permitting him to waive his right to counsel.

in an order dated April 25, 1997. On June 27, 1997, the State of Nevada filed a motion to dismiss, asserting that one of Tillema's seven claims—his allegation that the imposition of three life sentences for non-violent property offenses violated the Eighth Amendment's prohibition against cruel and unusual punishment—was unexhausted, because Tillema had presented the claim to the Nevada courts "under a different legal theory" without reference to the federal Constitution. In a Report and Recommendation entered on October 31, 1997, the magistrate judge agreed with the state and recommended that Tillema's petition be dismissed without prejudice for failure to exhaust his Eighth Amendment claim. District Judge Philip M. Pro adopted the magistrate's recommendation and dismissed Tillema's petition in an order dated December 12, 1997. The court's dismissal order failed to apprise Tillema of the option to strike the unexhausted claim and to proceed only with his exhausted claims as an alternative to dismissal.

On August 27, 1998—nearly three years after Tillema had filed his second Motion to Vacate Illegal Sentence, and almost as long after he had appealed the trial court's dismissal of that motion—the Nevada Supreme Court issued an order disposing of the motion. It held that because it had "once considered and rejected [Tillema's] claims," its previous decision was "law of the case." The court therefore dismissed Tillema's appeal. The Remittitur issued on September 15, 1998.

One week later, on September 22, 1998, Tillema commenced the instant federal proceeding by mailing a motion for appointment of counsel, together with a new section 2254 petition, to the district court.[2] The court appointed the Federal Public Defender as counsel and ordered that an amended petition be filed.

Tillema filed his amended petition on May 24, 1999. The state once again moved to dismiss, this time principally on the ground that Tillema's petition was time-barred. In a report entered on November 2, 1999, the magistrate judge recommended that Tillema's petition be dismissed with prejudice because it was untimely under 28 U.S.C. § 2244(d)(1).[3] The magistrate concluded that Tillema was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2)[4] during the

---

2. All proceedings regarding the instant petition were conducted before then District Judge Johnnie B. Rawlinson, rather than Judge Pro, who had presided over the earlier proceedings.

3. Section 2244(d)(1) provides:

"A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

4. Section 2244(d)(2) provides:

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

pendency of any of his post-conviction proceedings. The district court adopted the magistrate's recommendation and dismissed Tillema's appeal in an order entered on March 29, 2000. Tillema timely appealed.

## II. *Analysis*

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a one-year statute of limitations on the filing of federal habeas corpus petitions. Under 28 U.S.C. § 2244(d)(1)(A), state prisoners have one year from the date on which their convictions become final in which to initiate federal habeas corpus proceedings. That period of limitation is statutorily tolled, however, during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. § 2244(d)(2). The parties agree that Tillema's conviction became final on July 2, 1996, when his time expired to seek certiorari in the United States Supreme Court. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.1999). Absent any tolling of AEDPA's limitation period, then, Tillema's federal petition would have been due on July 2, 1997. Because Tillema did not file the instant petition until September 22, 1998, the petition was untimely unless statutory or equitable tolling excused the delay.

Tillema contends that he was entitled to tolling of AEDPA's limitations period for three reasons. First, he argues that his "Motion to Vacate Illegal Sentence," filed on October 30, 1995 and denied on September 15, 1998, was a "properly filed application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2). Second, he urges that any time in excess of AEDPA's limitation period should be equitably tolled, because the district court erred by dismissing his original section 2254 petition without providing him with the option of proceeding on his exhausted claims only. We agree with both of Tillema's contentions.[5]

### A. *Statutory Tolling*

Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." It is undisputed that if Tillema's second "Motion to Vacate" tolled AEDPA's statute of limitations, the instant petition was timely filed: the motion was filed on October 30, 1995, before the limitations period began to run, and it was denied on September 15, 1998, only seven days before Tillema filed the petition.

---

**5.** Tillema also contends that he was entitled to statutory tolling during the pendency of his first section 2254 petition. Concurrently with the issuance of our opinion, the Supreme Court held that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the mean-

ing of section 2244(d)(2) and, as a result, the limitation period is not statutorily tolled while a petitioner seeks federal habeas review. *Duncan v. Walker*, 531 U.S. 991, 121 S.Ct. 2120 (2001). Therefore, Tillema's argument on this ground is without merit.

The state successfully argued below that Tillema's motion to vacate was not "properly filed" within the meaning of section 2244(d)(2), because the Nevada Supreme Court denied the motion under the doctrine of "law of the case." However, after the district court dismissed Tillema's petition, but before oral argument on this appeal was held, the Supreme Court issued its decision in *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). In *Bennett*, the Court held, unanimously, that the term "properly filed" refers solely to requirements for filing, not to requirements for obtaining relief.[6] At oral argument, the state appropriately conceded that, in light of *Bennett*, it is now clear that Tillema's motion to vacate was properly filed.

Nonetheless, the state continues to argue that Tillema's motion did not toll AEDPA's limitations period because the motion did not include a "claim" that is now being raised in his federal petition. The state maintains that the language of section 2244(d)(2), which specifies that the period of limitation is tolled while "a properly filed application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim* is pending," requires that, in order to trigger AEDPA's tolling provision, the state application must include a *claim* that is subse-

quently presented in the federal habeas petition. 28 U.S.C. § 2244(d)(2) (emphasis added). It is not enough, the state contends, that Tillema's application sought relief with respect to the same *judgment.* To allow Tillema's motion to toll the statute of limitations, the state insists, "would ignore that 'pertinent' qualifies both 'judgment' and 'claim,'" and would render "surplusage" the word "claim."

◼ The state's argument is plainly wrong. To begin with, the state's reading of section 2244(d)(2) fails on its own terms. The words "judgment" and "claim" are used in the disjunctive. Thus, to accept the state's argument would be to render the word *judgment* "surplusage." In truth, the state does not urge that we read the statute so as to avoid rendering any of its language "surplusage." Rather, it simply prefers that we render "surplus" one particular term instead of the other (although we do not believe it necessary or proper to treat either term in that manner). Moreover, the state's preference runs contrary to the controlling rules of statutory construction, which require that "terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise...." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); *see also In re Pacific–Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir.1995) ("In construing a

---

**6.** The Court explained:

"An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement in the official record. And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."

*Bennett*, 121 S.Ct. at 363–64 (emphasis in original) (citations omitted). The state does not argue that the motion was untimely or that it violated any other rule setting forth conditions for filing. *See Edwards v. State,* 112 Nev. 704, 918 P.2d 321, 323–24 (1996) ("Because of the very nature of the remedy sought in a motion for relief from a sentence that is either illegal or is the result of a mistaken assumption regarding a criminal defendant's record, time constraints and procedural defaults necessarily do not apply.").

statute, a court should interpret subsections written in the disjunctive as setting out separate and distinct alternatives.").

■ The text of section 2244(d) makes clear that, in drafting the provision in question, Congress was aware of the distinction between the word "judgment" and the word "claim," and did not intend that the first word employed in the provision be ignored. Section 2244(d)(1), which immediately precedes AEDPA's tolling provision, provides that the limitation period shall begin to run, *inter alia*, from "the date on which the *judgment* became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A) (emphasis added), *or* from "the date on which the factual predicate of the *claim or claims* presented could have been discovered through the exercise of due diligence," *id.* at (D) (emphasis added), whichever is later. Thus, under section 2244(d)(1), either the finality of a "judgment" or the identification of a "claim" may trigger the running of AEDPA's one-year limitation period.

Section 2244(d)(2) tracks the language of section 2244(d)(1) in providing for statutory tolling so long as the state collateral petition *either* attacks the pertinent judgment *or* contains the pertinent claim.[7] As there is no dispute that Tillema's motion to vacate attacked the pertinent judgment, AEDPA's limitation period was tolled during the pendency of that motion.[8]

Because the plain language of the statute expressly compels the result we reach, we could well stop here, without considering any of the consequences of our holding (or a contrary one). In its most recent opinion on the question of AEDPA tolling, the Supreme Court stated once again that where, as here, the text of a statute provides only one "permissible interpretation," arguments based on policy "are beside the point," as "it is not the province of this Court to rewrite the statute to accommodate them." *Bennett*, 121 S.Ct. at 365. The simple fact is that Congress chose the words "judgment or claim," not merely the word "claim," and to accept the state's

7. This construction of section 2244(d)(2) does not, as the state contends, read the word "claim" out of the statute. Although it is true that in most cases a state application that includes a pertinent claim will also, as a matter of course, relate to the pertinent judgment, such will not always be the case. For example, a claim that a death-row inmate is incompetent to be executed does not challenge the validity of the judgment, but only its execution. *See Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Similarly, a claim challenging the unconstitutional revocation of "good-time credits," though cognizable only in habeas corpus proceedings, has no bearing on the underlying judgment of conviction and sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

In any event, were we to disregard the rules of construction that command us to avoid rendering statutory language surplusage, we would give primary meaning to the first and broader term set forth in the statute, "judgment," rather than to a subsequent and less inclusive term, "claim." Otherwise, we would, by judicial action, be revising and narrowing the provision at issue.

8. We also do not, as the dissent asserts, afford the word "pertinent" no meaning. As used in the statute, "pertinent" is simply a shorthand way of saying, "the judgment of conviction and sentence in the state court that is being contested in the federal habeas proceeding." Congress could have employed that phrase, the phrase "with respect to the state court judgment being attacked," or some other unnecessarily cumbersome phrase. Instead it chose in the interest of simplicity to refer to the judgment that would be at issue in the federal proceeding as the "pertinent" judgment.

argument would be, in the Court's words, to "rewrite the statute." Accordingly, even if our holding appeared to be at odds with Congress's principal policy goals in enacting AEDPA, it would be for Congress, not this court, to amend the language of the tolling provision.

In any event, it is clear that our holding will advance, rather than undermine, the policies of comity and federalism upon which AEDPA was enacted. Tolling AEDPA's limitations period during the pendency of a state collateral proceeding that attacks the pertinent judgment is consistent not only with the plain language of the statute, but also with the principle that state courts should be afforded "the unfettered first opportunity to review the prisoner's claim and to provide any necessary relief." *Nino v. Galaza*, 183 F.3d 1003, 1007 (9th Cir.1999). Allowing the state that opportunity without premature federal interference "reinforces comity and respect between our respective judicial systems," *id.*, and may well obviate the need for any federal review at all: when a state court is willing to entertain a challenge to the validity of the pertinent judgment, a result that is favorable to the petitioner will ordinarily avert any federal intervention regarding the legality of the prisoner's continued confinement. By contrast, were we to deny tolling of AEDPA's limitation period on the ground suggested by the state, habeas petitioners might be compelled to forego available state-law remedies so as not to forfeit their opportunities for federal review of substantial federal claims that were exhausted fully on direct appeal.

For example, under the state's theory, a petitioner who had exhausted all of his potentially meritorious federal claims on direct appeal, and who wished to pursue a state collateral remedy for a state-law violation that might well provide full relief from his criminal judgment, would not be entitled to tolling of AEDPA's limitation period during the pendency of his state collateral review. Rather, the petitioner would be faced with the choice of pursuing *simultaneously* his state postconviction claims (which might well render a federal proceeding unnecessary) *and* the potentially unnecessary federal proceeding itself—a result that Congress surely did not intend—or of abandoning his meritorious federal claims altogether (because he would almost certainly be time-barred from raising those claims in the district court by the time the state completed its collateral review process). In fact, even if the petitioner were to pursue in state court a *federal* claim, such as ineffective assistance of counsel, which is best presented through postconviction procedures, he would lose his right to file a federal habeas petition unless he ultimately included that claim in his federal petition, no matter how meritless the claim turned out to be following a state-court evidentiary hearing. To put it differently, under the state's reading of the statute, the time for filing the federal petition as to the potentially meritorious federal claims that were exhausted on direct appeal would be tolled by a state postconviction proceeding *only* if the petitioner included in his federal petition the collateral claim that he himself recognized—after all of the pertinent evidence was presented in state court—to be without merit.[9]

9. The peculiarity of this reasoning is underscored by the fact that if the petitioner initially failed to include the meritless ineffective-

ness claim in his habeas petition, he could readily "cure" the untimeliness of the petition and render it timely simply by amending it to

It appears obvious to us that when Congress wrote "judgment or claim," it meant just that. Congress did not intend that federal claims resolved adversely to the petitioner by the state's highest court on direct appeal would be forfeited simply because the petitioner invoked his right to pursue in the state courts other claims better suited for collateral review than for direct appeal. Nor, certainly, did Congress intend that a petitioner's right to file a federal habeas petition as to the federal issues the state court decided on direct review would depend on whether, after the completion of the state collateral proceedings, the petitioner could identify one collaterally challenged federal issue resolved in a manner adverse to him that he could in good faith include in his federal petition.

We therefore hold, consistent with the language and purpose of the statute, that AEDPA's period of limitation is tolled during the pendency of a state application challenging the pertinent judgment, even if the particular application does not include a claim later asserted in the federal habeas petition.[10] Our holding does not, of course,

in any way alter or excuse the fundamental requirement that habeas petitioners must exhaust in state court any claims that they wish to present in federal court. *See* 28 U.S.C. § 2254(b). If, as is the case here, a particular state collateral application that tolls the statute of limitations does not include a claim that is later raised in the federal habeas corpus petition, the claims that *are* raised in that petition must, to the extent required by state law, have been exhausted, either on direct appeal or in a separate state collateral proceeding. Simply put, the statute of limitations (which is the issue before us in this case) and the exhaustion doctrine (which is not) impose entirely distinct requirements on habeas petitioners; both must be satisfied before a federal court may consider the merits of a petition.

■ Because Tillema's motion to vacate tolled AEDPA's limitation period from October 30, 1995, until September 15, 1998, the instant petition—filed only seven days later—was timely, and should not have been dismissed.[11]

---

include the meritless claim along with the potentially meritorious claims that he had exhausted on direct appeal.

10. We recognize that the Sixth Circuit, faced with the same question, reached a contrary result. *See Austin v. Mitchell,* 200 F.3d 391, 395 (6th Cir.1999), *cert. denied,* 530 U.S. 1210, 120 S.Ct. 2211, 147 L.Ed.2d 244 (2000) ("[A] state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations."). However, the Sixth Circuit made no attempt to account for the inclusion of the word "judgment," as well as the word "claim," in the text of section 2244(d)(2), perhaps because the pro se petitioner failed to raise the argument before it; nevertheless, the Sixth Circuit's reading of the

statute violates the canon that "we are obliged to give effect, if possible, to every word Congress used." *Reiter,* 442 U.S. at 339, 99 S.Ct. 2326 (citing *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). Although we do not lightly adopt a holding that results in a disagreement between circuits, we do not find the Sixth Circuit's construction of section 2244(d)(2) to be consistent with the text and purpose of the statute.

11. The dissent but concurrence argues that the question regarding the language "pertinent judgment or claim" is not certified, and therefore should not be addressed by the panel. This argument is supported by neither law nor fact. First, it is not arguments that are certified, it is issues and claims. In Tillema's case, the issue or claim certified is whether his habeas petition is timely. The question regarding the meaning of the language of § 2244(d)(2) clearly is comprehend-

## B. *Equitable Tolling*

■ In the alternative, we hold that any time in excess of AEDPA's limitation period should be equitably tolled because the district court committed prejudicial legal error when it dismissed Tillema's first federal habeas petition without affording him the opportunity to abandon his sole unexhausted claim as an alternative to suffering dismissal. In *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that "mixed" federal habeas petitions—that is, those containing both exhausted and unexhausted claims—must be dismissed for failure to exhaust state remedies. The Court directed district courts to provide habeas petitioners "with the *choice* of returning to state court to exhaust [their] claims *or of amending or resubmitting the habeas petition to present only exhausted claims to the district court.*" *Id.* at 510, 102 S.Ct. 1198 (emphasis added). In applying *Rose,* we have "long held that a federal habeas petitioner has a right to amend a mixed petition to delete unexhausted claims as an alternative to suffering a dismissal." *James v. Giles,* 221 F.3d 1074, 1077 (9th Cir.2000); *see also Calderon v. United States Dist. Ct. (Taylor),* 134 F.3d 981, 986 (9th Cir.1998). In *Anthony v. Cambra,* 236 F.3d 568 (9th Cir.2000), we explained the enhanced significance of that rule in light of AEDPA's statute of limitations:

> Prior to the advent of AEDPA, dismissal without prejudice to the filing of a new, exhausted petition caused no detriment to the petitioner, because there was no time limitation on the filing of a federal habeas petition. AEDPA's one-year statute of limitations, however, has rendered outright dismissal perilous to

some litigants, because petitioners ... may find themselves time-barred when they attempt to resubmit their exhausted claims to the district court.

*Id.* at 573. We held that the "outright dismissal" without leave to amend of the petitioner's federal habeas petition was "improper," and reiterated that "district courts must provide habeas litigants with the opportunity to amend their mixed petitions by striking their unexhausted claims...." *Id.* at 574; *see also Freeman v. Page,* 208 F.3d 572, 577 (7th Cir.2000) (dismissal of mixed federal petition "is not proper when that step could jeopardize the timeliness of a collateral attack").

Tillema's case makes clear why the rule enunciated in *Rose,* and further explicated in *Anthony* and previous Ninth Circuit cases, is such a crucial one, and why district courts must take special care to advise habeas petitioners of their option to strike unexhausted claims in light of AEDPA. For purposes of AEDPA's statute of limitations, Tillema's conviction became final on July 2, 1996. In the absence of a motion to vacate or other state collateral proceeding that meets the statutory tolling requirement, Tillema's federal petition would have been due one year later, on July 2, 1997. Tillema filed his first federal petition on September 26, 1996, well within AEDPA's limitation period. However, the district court did not dismiss Tillema's petition until December 12, 1997—*more than five months after Tillema's one-year limitation period would have expired.* Because there is no statutory tolling of AEDPA's limitation period during the pendency of federal habeas petitions, *see* note 5,

ed within that issue. Second, the district court *granted* Tillema's request for a COA to decide whether the petition was timely. The district court did not, although it could have, grant in part and deny in part Tillema's re-

quest. Instead, it issued an unqualified grant of the COA. The out-of-context excerpt from the district court order discussing its reasons for granting the COA does not change that fact.

*supra*, the district court's erroneous dismissal of Tillema's petition would, barring some other circumstance, have literally and immediately extinguished his right to federal habeas review. In this case, therefore, it cannot accurately be said that the dismissal of Tillema's petition was, as the court's order stated, "without prejudice."

As we have previously held, "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999); *see also Calderon v. United States Dist. Court (Kelly)*, 128 F.3d 1283, 1288–89 (9th Cir.1997), *overruled on other grounds by Calderon v. United States Dist. Court*, 163 F.3d 530 (9th Cir.1998) (en banc) (petitioner entitled to equitable tolling where petitioner's counsel withdrew and left replacement counsel with unusable work product that made timely filing impossible); *Kelly*, 163 F.3d at 541–42 (petitioner entitled to equitable tolling because the district court ordered a stay preventing petitioner's counsel from filing a timely habeas petition and because petitioner was allegedly mentally incompetent).

Equitable tolling of AEDPA's limitations period is at least as warranted here as in prior cases in which we have applied the doctrine: had the district court followed the law, *i.e., Rose v. Lundy*, Tillema would have been permitted to proceed with all but one of his claims; because the district court erred, Tillema lost all opportunity for federal review of all of his claims.[12] We therefore hold that Tillema is "entitled to the benefit of the equitable tolling of the statute of limitations." *Kelly*, 163 F.3d at 542.

### III. *Conclusion*

We reverse the district court's order dismissing Tillema's petition for habeas corpus relief as untimely, and we remand to the district court for further proceedings consistent with this opinion.[13]

**REVERSED AND REMANDED.**

---

**12.** Aside from the other disagreements we have with our colleague's spirited dissent but concurrence, we cannot, as she would wish, properly resolve the case before us by simply remanding to the district court for further proceedings regarding the *Rose v. Lundy* issue-proceedings that might well lead to further legal disagreements and further appeals and remands. If Tillema is correct with respect to his statutory tolling argument, and we conclude that he is, he is entitled to the full relief he seeks on this appeal-a determination that his habeas petition was timely filed. Because the statutory tolling argument affords greater relief than Judge Rymer would grant and because if Tillema prevails on his statutory argument, there would be no need to remand for further proceedings on the *Rose v. Lundy* issue, we *must* consider the statutory argument first. We, nevertheless, in this case rest our decision not only on the statutory ground but also on the alternate ground of equitable tolling, because Tillema is entitled to the relief he seeks on both of those grounds. The thrust of our habeas jurisdic-

tion these days is to complete all legal proceedings regarding the underlying case as expeditiously as possible and to avoid repeated, successive, and unnecessary court proceedings when the issues can all be disposed of at one time. Here, because both issues are relatively straightforward and can be resolved by the application of traditional principles and rules, this is not an appropriate case for the one-issue-at-a-time approach. Rather, by resolving both in one appeal, we best serve the interests of the orderly administration of justice.

**13.** Because Tillema has once again raised his Eighth Amendment challenge in the instant petition, the district court will be required, on remand, to "assess the likelihood that a state court will accord [him] a hearing on the merits of his claim," in order to determine whether the claim is exhausted. *Harris v. Reed*, 489 U.S. 255, 268, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring); *see also Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)

RYMER, Circuit Judge, dissenting but concurring in the judgment:

I concur in the judgment reversing for *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), error, although I disagree with the majority's reasoning and instructions on remand. However, because we reverse on this ground, discussion of what "pertinent claim or judgment" in 28 U.S.C. § 2244(d)(2) means or how it plays out in this case is unnecessary to the decision. I therefore dissent from any discussion of this issue.

I concur in the judgment because I believe that Tillema did not have an informed opportunity to amend his first federal petition and let the unexhausted Eighth Amendment claim go. *James v. Giles*, 221 F.3d 1074 (9th Cir.2000). The district court dismissed Tillema's original mixed petition without prejudice, but did not give him the choice of exhausting the claim by returning to state court, or deleting it from the petition to stay in federal court. Perhaps if this oversight had not occurred, the statute of limitations would not have become a problem. Now the statute of limitations *is* a problem, but *Anthony v. Cambra*, 236 F.3d 568 (9th Cir.2000), sheds light on how it could be approached (and may be cured). In *Anthony*, the district court itself recognized that it had mistakenly dismissed the petitioner's mixed petition without affording him an opportunity to amend or resubmit the petition with only exhausted claims, and the court treated his next (otherwise untimely) petition as an amendment that related back to and

preserved his original filing date. We held that the court had authority to do this. By the same token in this case, we must reverse because the district court mistakenly dismissed Tillema's mixed petition without offering options, but we should leave it to the district court on remand to craft an appropriate remedy. I would *not* direct the district court to apply equitable tolling, because to do so goes well beyond *James* or *Anthony*. It is one thing to uphold a district court's exercise of discretion to reinstate the first petition or to relate a new filing back; it is quite another to hold that a district court *must* apply equitable tolling just because it "misapplied" the law.

I dissent from discussing (let alone deciding) the "pertinent judgment or claim" issue because:

(1) The issue is not certified;[1]

(2) We agree there is a straightforward basis for reversing on another ground (failure to give Tillema the choice of returning to state court or resubmitting the federal habeas petition without the unexhausted claim), which makes the majority's alternative holding (on what constitutes a "pertinent judgment or claim") unnecessary;

(3) To reach the issue and to resolve it as the majority does creates a circuit split. *See Austin v. Mitchell*, 200 F.3d 391 (6th Cir.1999) (holding that a state petition does not toll the statute with respect to a claim that is raised in the

---

(exhaustion requirement applies "only to remedies still available at the time of the federal petition"). If the court concludes that a remedy remains available to Tillema in the Nevada courts, it must provide him the opportunity to strike the claim and to proceed with his remaining claims. If, on the other hand, the court determines that Tillema is unlikely to receive a merits adjudication of his Eighth

Amendment claim in state court, *see* Nev.Rev. Stat. § 34.810(1) and (2), it shall deem the claim exhausted.

**1.** The only issue on which the Certificate of Appealability was issued is: "whether the Petitioner's first habeas petition tolled the Antiterrorism and Effective Death Penalty Act ('AEDPA') limitations period."

federal petition but not in the state petition), *cert. denied,* 530 U.S. 1210, 120 S.Ct. 2211, 147 L.Ed.2d 244 (2000);

(4) This is an important issue, raising serious questions of statutory interpretation and Congressional intent, which the majority's opinion resolves by reading both the adjective "pertinent" and the word "claim" out of § 2244(d)(2) even though this construct is not plain[2] and the opinion offers no contextual or

other reason founded in legislative history to do so; and

(5) All this is done based on a few sentences in the briefs that provide no real discussion, and certainly no in-depth analysis, of the issue.[3]

---

**2.** It is by no means clear that "pertinent" judgment refers only to the trial court's judgment of conviction and sentence (as the majority interprets it), such that *any* post-conviction attack that could undo that judgment tolls the running of the statute regardless of which claims are pursued in the state system and which are brought on federal habeas. After all, *all* post-conviction efforts aim to undo that judgment. Further, the "pertinent" judgment for purposes of federal habeas proceedings can be the judgment of the state appellate court. Thus, contrary to the majority's view, to construe the text differently from the way it construes it does not inevitably read "judgment" out of the statute.

Nor is the majority's reading required to preserve grounds raised on direct review for timely federal habeas review; the petitioner may preserve all his grounds (including those raised on direct review) for timely federal habeas by raising them in properly filed state post-conviction proceedings (whether or not they will be held to be procedurally defaulted). This would stop the clock from running as to them.

It also is by no means clear that "judgment" necessarily trumps "claim," or that reading "judgment" as broader than "claim" helps discern how § 2244(d)(2) should be construed, as the majority suggests. Sometimes there can be a cognizable habeas "claim" without any "judgment" at all, for example, pre-trial no-bail detention.

The one thing that does seem clear is that whatever the "judgment," or whatever the "claim," it must be "pertinent" to be not counted toward the one-year period of limitation. In order for a judgment or claim to be "pertinent" there must be judgments or claims that are *not* "pertinent"—unless, of course, Congress meant to distinguish only impertinent judgments.

**3.** This is not surprising, as the parties were focused on other issues. In any event, here is the sum total of the argument: From the state:

> To give meaning to the language of 28 U.S.C. § 2244(d)(2), the Second Motion to Vacate cannot serve to toll the limitations period because it does not contain a pertinent claim that is being challenged in the federal petition. An interpretation of this statute that any challenge to the judgment will toll the limitations period, would ignore that "pertinent" qualifies both "judgment" and "claim." In that regard, the word "claim" would be rendered surplusage. A statute must be construed such that every word has operative effect. *United States v. Lewis*, 67 F.3d 225, 229 (9th Cir. 1995). The claim raised in TILLEMA's Second State Petition have [sic] no relationship to the claims raised in the instant Amended Petition. Accordingly, that Motion cannot serve to toll the AEDPA limitations period because it does not challenge a "pertinent judgment or claim." *See* 28 U.S.C. § 2244(d)(3).

From Tillema:

> The analysis does begin with basic principles of statutory construction. The one year statute is tolled under § 2244(d)(2) when the "State ... challenge" [sic] attacks the state judgment. The judgment is, of course, the conviction and sentence that was imposed; in this case, three consecutive life sentences. Congress separated the words "judgment" and "claim" with the word "or" because they intended to provide "separate and distinct alternatives." *In re Pacific Atlantic Trading Co.*, 64 F.3d 1292, 1301 (9th Cir.1995); *United States v. Behnezhad*, 907 F.2d 896, 897 (9th Cir.1990).
>
> This intent is further illuminated upon review of the entire text of § 2244(d). For

example, subsection (1)(A) contemplates a "judgment" as its triggering date, whereas subsection (1)(D) references a claim or claims as the key to triggering the one year period. Clearly, each word has separate meaning be-cause Congress wrote the statute with that intent. The Appellee's interpretation of the phrase "pertinent judgment or claim" should be rejected by this court.